# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **OLIVIA A. KNEELAND** | : | **DOCKET NO.  2:12-cv-2654** |
| **VS.** | : | **JUDGE MINALDI** |
| **U.S. COMMISSIONER OF SOCIAL SECURITY** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of disability insurance benefits and supplemental security income benefits.  This matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

After review of the entire administrative record and the briefs filed by the parties, this court recommends that the Commissioner's decision should be AFFIRMED and this matter DISMISSED with prejudice.

## I.
### PROCEDURAL HISTORY

On September 21, 2006, plaintiff filed an application for supplemental security income ("SSI") benefits alleging disability beginning on April 12, 2006.  Tr. 270.  Her claim was initially denied and she was granted an administrative hearing which was held on July 30, 2008.  Tr. 623-32.  Plaintiff waived her right to counsel at this hearing.  Tr. 626.  On August 22, 2008, the Administrative Law Judge ("ALJ") issued an unfavorable decision.  Tr. 33-43.  On October 27, 2008, plaintiff filed another application for SSI and also applied for disability insurance

benefits ("DIB").  On January 24, 2009, and February 5, 2009, she was awarded benefits based on a finding that she met listing 12.05C, mental retardation.

On September 16, 2009, plaintiff appealed the August 22, 2008, denial of SSI benefits to the Appeals Council.  On June 18, 2010, the Appeals Council granted her request for review of the August 22, 2008, denial, re-opened the favorable determinations made on January 24, 2009, and February 5, 2009, vacated the favorable decisions, and consolidated the claims.  Tr. 92-96. On August 25, 2010, the Appeals Council remanded the case for further proceedings.  Tr. 87-91.

In its remand order the Appeals Council noted that the basis for determining that plaintiff met listing 12.05C was an August 18, 2008, report in which testing results indicated that plaintiff suffered from mental retardation.  This report, the Appeals Council stated, contrasted with later testing which indicated borderline intellectual functioning, not mental retardation.  The Appeals Council also noted that the August 18, 2008, report reflected an inaccurate history of formal education, did not refer to evidence which established sub-average intellectual functioning which manifested itself prior to the age of 22, and did not discuss the effect of anxiety, depressive, and bipolar symptoms on the cognitive testing.

On remand the Appeals Council directed the ALJ to obtain additional evidence concerning the claimant's musculoskeletal, affective, and cognitive disorders in order to complete the administrative record; further evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations; further evaluate the claimant's mental impairments in accordance with the technique described in 20 C.F.R. 416.920a; if necessary, obtain evidence from a medical expert to clarify the nature and severity of claimant's mental impairments; give further evaluation consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with references to support the assessed

limitations; and obtain evidence from a vocational expert to clarify past relevant work and the effect of the assessed limitation on the claimant's occupational base.  Tr.87-91.

Following remand the ALJ held a hearing on August 3, 2011.  Plaintiff, who was represented by a non-attorney representative, testified along with Frank L. Barnes, M.D., Alan J. Klein, Ph.D., and Beverly Majors, a vocational expert.  Tr. 633-701.  On September 9, 2011, the ALJ issued an unfavorable decision.  In his decision, the ALJ found that found plaintiff was not disabled because she retained the residual functional capacity ("RFC") to perform light work with certain limitations and that that there were jobs that existed in significant numbers in the national economy that plaintiff could perform.  *Id.*

Plaintiff filed a request for appellate review of this decision.  Tr. 13-14.  On June 22, 2012 the Appeals Council denied her request for review.  Tr. 7-9.  On October 5, 2012 plaintiff filed suit in this court appealing the determinations of the Commissioner.  Doc. 1.

## II.
### FACTS AND MEDICAL EVIDENCE

### A.  Facts

Plaintiff was born on January 12, 1979, and was 39 years old on the date of the August 3, 2011, hearing.  Tr. 641.  She testified that she dropped out of school in the ninth grade, is not married, and has six children ages 8, 7, 5, 4, 3, and 2.  Tr. 641, 43-44.  She earned a certification to be a certified nursing assistant.  Tr. 684.  She testified that she last worked in 2008 as a server at the Waffle House.  Tr. 642.  She was incarcerated from August 2003 through October 2004 for distribution of crack cocaine.  *Id.*  Plaintiff testified that she had difficulty in school and has problems with her nerves.  She reported that she has a very short temper and when she gets mad at someone she wants to fight.  Tr. 647-48.  She testified that she was recently diagnosed with HIV.  Tr. 648.

### B.  Medical Evidence

#### 1.  Jennings American Legion Hospital

The majority of the medical records from Jennings American Legion Hospital document plaintiff's various pregnancies and will not be summarized in this opinion.

On April 12, 2006, plaintiff presented at the emergency room following a motor vehicle accident.  She was 33 weeks pregnant and complained of leg pain.  Diagnostic testing revealed acute non-displaced fractures of the right fifth and sixth ribs and a severely commuted fracture of the anterior aspect of the calcaneus with significant soft tissue swelling and edema.  Tr. 283-91. After an orthopedic consult on April 13, 2006, nonsurgical management of the heel fracture was recommended due to plaintiff's pregnancy.

#### 2.  University Medical Center

Plaintiff was seen on May 1, 2006 for surgical clearance.  She was scheduled for open treatment of the fracture of the right calcaneus with internal fixation.  Surgery was performed on May 16, 2006, and she was discharged on May 17, 2006, with medications and instructions to keep the foot elevated and no weight bearing.  Tr. 338-347.

She was seen for follow-up on May 26, 2006, where she complained of pain and numbness.  Tr. 337.  On June 2, 2006, x-rays showed the overall position and alignment of the fracture was satisfactory.  Tr. 333.  At a follow-up exam on June 9, 2006 the wound was dry and intact, plaintiff complained of tightness with the swelling but no pain or numbness.  Tr. 332.  On October 5, 2006, medical notes indicate that plaintiff was ambulating without complaint, she had no complaints of pain but swelling with numbness and tingling persisted.  X-rays revealed a healed fracture with hardware in place.  She was released to return to full duty work.  Tr. 330-31.

On March 28, 2007 plaintiff presented complaining of right foot pain.  She reported a history of surgery a year ago.  She denied any recent re-injury and reported swelling, and tingling to the bottom of the foot.  She was told to use a cane or a walker and continue weight bearing as tolerated.  She was prescribed a shoe insert and asked to return in 3 months.  Tr. 406.

### 3.  Lawrence S. Dilks, Ph.D.

Plaintiff was evaluated on August 18, 2008c by Dr. Lawrence Dilks on referral from the Louisiana Rehabilitation Services.  She reported that her major problem was bipolar disorder which has occurred over the past several years and has a damaging effect on her work performance.  She stated that previous treatment for the problem was partially successful.  Other problems she described were depression, episodes of anxiety, vocational distress, and poor health.  She reported that she was unemployed, has an eighth grade education, has five children, and has never been married.

Dr. Dilks administered several tests including the WAIS-III in which the plaintiff scored a full scale IQ score of 69, a verbal IQ score of 73, and a performance IQ score of 70.  Dr. Dilks diagnosed bipolar disorder – mixed, pain disorder – psychological and physiological features by history, and mental retardation – mild.  Tr. 356-62.

### 4.  R. Dale Bernauer, M.D.

On August 25, 2008 Dr. Bernauer addressed a letter to "Louisiana Rehab" in which he noted that he saw plaintiff on August 25, 2008, when she reported undergoing surgery for a fractured right calcaneus in 2006.  His examination showed her foot to be swollen and deformed. He found the area tender to palpitation.  X-rays showed the Bohler's angle was flattened and subtalar joint was arthritic.  It was his opinion that plaintiff could not do any job that entails standing for longer than 30 minutes or walking farther than 50 yards.  Tr.363.

### 5. *Joseph Tramontana, Ph.D.*

On January 12, 2009 Dr. Joseph Tramontana conducted a psychiatric review technique. He concluded, based on the report issued by Dr. Dilks on August 18, 2008, that plaintiff suffers from affective disorders (bipolar syndrome) and mental retardation and meets listing 12.05C.  Tr. 371-87.

### 6. *Jerry Whiteman, Ph.D.*

Plaintiff saw Dr. Jerry Whiteman on February 26, 2009, for a psychological evaluation. She reported that she suffers from pain in her right foot from a 2006 automobile accident which makes it difficult to stand for extended periods.  Dr. Whiteman administered the WAIS –III test, conducted a mental status/clinical interview, and made behavioral observations.  Plaintiff reported that she went as far as tenth grade at Jennings High School but quit when the school wanted to move her to special education classes.  She stated that she does not drive and does not perform many household chores except to wash dishes on occasion and care for her children.

Dr. Whiteman described plaintiff's mental status as adequate in all spheres.  Her pace and persistence were modest, she demonstrated adequate reading skills, her short term memory was below average as she could recall four digits in the forward direction but could not recall five digits in the forward direction, and she was able to recall two out of five items after a five minute delay.

On the WAIS-III test plaintiff obtained a full scale IQ score of 74, a verbal IQ score of 77 and a performance IQ score of 74.  This score reflects borderline intelligence.  She has slight deficits in vocabulary and verbal reasoning abilities but her mathematical skills are adequate. She also has average capabilities in learning simple perceptual motor tasks.  Dr. Whiteman opined that plaintiff's cognitive abilities are "borderline, but adequate."  Tr. 391-93.

On February 27, 2009, Dr. Whiteman completed a mental medical source statement – mental wherein he found that plaintiff had slight limitations in her ability to understand and remember short, simple instructions, carry out simple instructions, interact appropriately with the public, supervisors, and with co-workers, and respond appropriately to work pressures in a usual work setting.  He found that she had moderate limitations in her ability to understand and remember detailed instructions, carry out detailed instructions, make judgments on simple work-related decisions, and respond appropriately to changes in a routine work setting.  Plaintiff had no marked or extreme limitations.  Tr. 394-95.

### 7.  *Alan J. Klein, Ph.D.*

Dr. Klein, a psychologist, testified by telephone at the August 3, 2011, hearing.  He was subpoenaed to testify on behalf of the Social Security Administration.  He stated that he reviewed all the medical evidence submitted including two psychological evaluations.  The first was completed by Dr. Lawrence Dilks in August 2008 and the second completed six months later by Dr. Jerry Whiteman in February 2009.  He noted that the evaluation by Dr. Whiteman indicated that plaintiff suffered from borderline intelligence, not mental retardation.  She scored 74 in full scale IQ, 77 in verbal, and 74 in performance on the WAIS-III test.  He noted that just six months earlier she scored a 69 in full scale IQ (which places her in the mental retardation range) when she was administered the test by Dr. Dilks.  He explained that there are many reasons one can obtain a deflated IQ score, including depression, lack of motivation, or malingering, but one cannot get a higher IQ score by chance.

Dr. Klein also testified that he did not find any comorbid conditions – evidence other than IQ scores – that would place her intellectual functioning in the mental retardation range from an adaptive perspective.  He concluded that plaintiff appeared to have borderline intellectual

functioning with some limitation such as moderate to marked limitations in her ability to carry out detailed instructions.

Dr. Klein further testified that the medical records do not support Dr. Dilks' diagnosis of bipolar disorder.  He stated that he did not find anything in the record that would indicate treatment, therapeutic intervention, or anything else which would corroborate such a diagnosis. He testified that he carefully reviewed Dr. Dilks' report and could find no objective support for his diagnosis noting that one of the tests administered by Dr. Dilks, the House-Tree-Person test, had questionable scientific value.  Tr. 649-75.

### 8.  *Frank L. Barnes, M.D.*

Dr. Barnes, an orthopedist, was also subpoenaed to testify on behalf of the Social Security Administration and testified by telephone at the August 3, 2011, hearing.  He stated that he reviewed the medical evidence and plaintiff's major orthopedic problem was a fractured calcaneus for which she underwent an open reduction with internal fixation surgery in 2006.  He noted that she experienced pain and swelling for a year or two after the surgery but the fracture healed with some residual symptoms.

Dr. Barnes opined that plaintiff would be limited to sedentary work.  She would be able to sit for eight hours in a work day, stand and walk for two hours in an eight hour work day, she would need to avoid uneven surfaces such as rough ground, and she would be restricted to occasionally squatting, bending, stooping, kneeling, crawling, and climbing stairs, and ramps. He did not assess any environmental limitations and found that she could lift a maximum of twenty pounds.  He would not impose a sit/stand option and would see no need to elevate the foot at will.  Tr. 676-82.

## III.
### STANDARD OF REVIEW

"In Social Security disability cases, 42 U.S.C. § 405(g) governs the standard of review." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Frith v. Celebrezze*, 333 F.2d 557, 560 (5th Cir. 1964)).  The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Greenspan*, 38 F.3d at 236).  "It is 'more than a mere scintilla and less than a preponderance.'"  *Id.*  (quoting *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)).  It is "such relevant evidence as a reasonable mind might accept to support a conclusion.  It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

In applying the substantial evidence standard, the reviewing court critically inspects the record to determine whether such evidence is present, "but may not reweigh the evidence or substitute its judgment for the Commissioner's."  *Perez*, 415 F.3d at 461 (citing *Greenspan*, 38 F.3d at 236; *Masterson*, 309 F.3d at 272).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Conflicts of evidence are for the Commissioner, not the courts, to resolve."  *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 272).

# IV.
## LAW AND ANALYSIS

### A.  Burden of Proof

The burden of proving that he or she suffers from a disability rests with the claimant. *Perez*, 415 F.3d at 461.  The Social Security Administration defines a "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting at least twelve months.  42 U.S.C. § 423(d)(1)(A).  The ALJ conducts a five-step sequential analysis to evaluate claims of disability, asking:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment[1]; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work.

*Id.* (citing 20 C.F.R. § 404.1520).  If the claimant meets the burden of proof on the first four steps, the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy.  *Id.*  "Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding."  *Id.* (quoting *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000)).

---

[1]  A severe impairment or combination of impairments limits significantly a claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1521(a).  Basic work activities are defined at 20 C.F.R. § 404.1521(b).  The term severe is given a *de minimis* definition as found in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985).  According to *Stone*, "[a]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  752 F.2d at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)).

If a severe impairment or combination of impairments is found at step two, the impairment or combined impact of the impairments will be considered throughout the disability determination process.  20 C.F.R. §§ 404.1520, 404.1523.  A determination that an impairment or combination of impairments is not severe will result in a social security determination that an individual is not disabled.  *Id.*

The analysis ends if the Commissioner can determine whether the claimant is disabled at any step.  *Id.* (citing 20 C.F.R. § 404.1520(a)).  On the other hand, if the Commissioner cannot make that determination, he proceeds to the next step.  *Id.*  Before proceeding from step three to step four, the Commissioner assesses the claimant's residual functional capacity (RFC).  *Id.*  "The claimant's RFC assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record."  *Id.* at 461-62 (citing 20 C.F.R. § 404.1545(a)(1)).  Specifically, in determining a claimant's RFC, an ALJ must consider all symptoms, including pain, and the extent to which these symptoms reasonably can be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. § 404.1529; Social Security Ruling 96-8p.  The ALJ must also consider any medical opinions (statements from acceptable medical sources) that reflect judgments about the nature and severity of impairments and resulting limitations.  20 C.F.R. § 404.1527, Social Security Rulings 96-2p, 96-6p.  The claimant's RFC is considered twice in the sequential analysis—at the fourth step it is used to determine if the claimant can still do his or her past relevant work, and at the fifth step the RFC is used to determine whether the claimant can adjust to any other type of work.  *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1520(e)).

Here, the ALJ found that plaintiff was not disabled.  The ALJ found that plaintiff suffered from the impairments or post calcaneus fracture and borderline intellectual functioning, that she had the RFC to perform light work with certain limitations, and that based on her age, education and work experience, there are jobs that exist in significant numbers that plaintiff can perform.

**B. Plaintiff's Claims**

In her appeal plaintiff argues that substantial evidence does not support the ALJ's decision.  Specifically, she sets forth the following arguments:

1.     The Appeals Council's basis for reopening plaintiff's January 20, 2009 and February 5, 2009 fully favorable disability awards is erroneous as a matter of law and not supported by substantial evidence.

2.     The ALJ failed to afford the plaintiff a full and fair hearing by denying the complete opportunity to confront and examine two medical experts upon whose testimony the ALJ relied to terminate plaintiff's benefits.

3.     The ALJ's residual functional capacity finding is not supported by substantial evidence.

4.     The ALJ posited a defective step five hypothetical; the vocational expert's responses to the defective question are meaningless.

We address plaintiff's claims in the order in which they were raised:

### 1.  Did the Appeals Council properly reopen the January 20, 2009 and February 5, 2009 favorable disability determinations?

Plaintiff argues that the Appeals Council erred in reopening the favorable decisions because the Council based its decision on inconsistencies in the psychological reports of Dr. Dilks and Dr. Whiteman and failed to discuss or evaluate the medical opinion of Dr. R. Dale Bernauer.   Plaintiff contends that Dr. Bernauer's report issued on August 25, 2008,[2] demonstrates that even if plaintiff's mental impairments did not meet or equal Listing 12.05C, her severe orthopedic impairment supported disability at Step Five of the evaluation sequence.

The Commissioner, in response, asserts that since the January 20, 2009, and February 5, 2009, favorable decisions were based on a finding that plaintiff met Listing 12.05C, the Appeals Council properly focused its attention on the new and material evidence which was in conflict with that determination.   Further, the Commissioner submits that the issue of whether or not plaintiff's orthopedic impairments warranted a finding of disability was an issue that the Appeals Council ordered the ALJ to consider on remand.

---

[2] In his August 25, 2008 report Dr. Beranuer opined that plaintiff "cannot work any job that entails standing for longer than 30 minutes or walking farther than 50 yards."  Tr. 363.

Title 20 C.F.R. § 416.1487 entitled "Reopening and Revising Determinations and Decisions" provides that the Appeals Council can reopen a determination or decision on its own initiative.  Section 416.1488 provides the conditions under which a decision can be reopened, as follows:

> (a)  Within 12 months of the date of the notice of the initial determination, for any reason;
>
> (b)  Within two years of the date of the notice of the initial determination if we find good cause, as defined in § 416.1489, to reopen the case; or
>
> (c)  At any time if it was obtained by fraud or similar fault.   In determining whether a determination or decision was obtained by fraud or similar fault, we will take into account any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) which you may have had at the time.

20 C.F.R. § 416.1488.  Under section 416.1489 "good cause" to reopen a determination exists if new and material evidence is furnished, a clerical error is made, or the evidence that was considered in making the determination or decision clearly shows on its face that an error was made.

On June 18, 2010, within two years of the favorable determinations, the Appeals Council found that good cause existed to reopen the favorable determinations based on new and material evidence. Tr. 93-96.  In sum, the Council found that evidence submitted to the Appeals Council on appeal and in conjunction with plaintiff's subsequent applications for disability were in conflict.   The court noted that while the report of Dr. Dilks suggested a finding of bipolar disorder and mental retardation based on intelligence testing, the report of Dr. Whiteman diagnosed borderline intellectual functioning.  The court further noted that neither report referred

to evidence of intellectual deficits manifested prior to the age of 22, a requirement of Listing 12.05C.

The Council found that "additional evidence is needed to clarify the nature and severity of the mental condition." Tr. 94. It noted that the additional evidence such as "mental health treatment records and consultative orthopedic and/or mental status examinations with psychological testing" along with vocational evidence was necessary in order to determine the effect of the assessed limitations on plaintiff's ability to do work. On remand, the Council ordered the ALJ to obtain additional evidence to determine the severity of plaintiff's impairments.

We find that the Appeals Council properly reopened the favorable determinations under 20 C.F.R. § 416.1487, *et seq*. The decisions were reopened within two years of the date of notice and good cause existed based on new and material conflicting medical evidence. We also find that plaintiff's argument that the Appeal's Council failed to consider the medical opinion of Dr. R. Dale Bernauer which she claims supported a determination of disabled misplaced.

Plaintiff's favorable determinations were based on a finding that she met Listing 12.05C, thus, we find that the Council properly focused on the evidence related to plaintiff's mental condition when it reopened the decisions. Additionally, in its remand order, the Appeals Council specifically instructed the ALJ to consider the evidence submitted[3] and to obtain additional evidence concerning, among other conditions, plaintiff's musculoskeletal disorders. At the hearing conducted after remand, the ALJ called an orthopedic expert, Dr. Barnes, to testify about any limitations imposed due to plaintiff's fractured calcaneus. Dr. Barnes testified that he reviewed the medical exhibits prior to his testimony. Additionally, in his opinion the ALJ found

---

[3] We note that Dr. Bernauer's report is found in the record at Tr. 234 and 363.

plaintiff's post calcaneus fracture a severe impairment and considered it in his five step evaluation.

We therefore find that plaintiff's orthopedic impairment was fully considered on remand and the Appeal's Council did not err in reopening and remanding the favorable decisions.

### 2.   Did the ALJ afford plaintiff a full and fair hearing?

Plaintiff contends that at her first hearing held on July 30, 2008, the ALJ failed to properly advise her of her right to counsel.  Citing the case of, *Galentine v. Astrue,* 2012 WL 1949865 (W.D. La. May 29, 2012), plaintiff argues that since she was unrepresented at the hearing the court was required to inform her of how an attorney could assist her in the proceeding, the possibility of free counsel or a contingency fee arrangement, and the limitation of attorney fees to twenty-five percent of past due benefits.  Plaintiff claims she was prejudiced by this error.

The Commissioner asserts that plaintiff validly waived her right to counsel at the July 30, 2008, hearing and also received written notice prior to the hearing of her right to counsel. Furthermore, the Commissioner argues that the mere lack of counsel is insufficient for reversal. Plaintiff must additionally show that she was somehow prejudiced by being unrepresented and the Commissioner argues that she has failed to make such a showing.

A social security claimant does not have a constitutional right to counsel at a social security hearing, *Goodman v. Richardson,* 448 F.2d 388 (5th Cir.1971), but does have a statutory right to have counsel present at a hearing.  42 U.S.C. § 406, 20 C.F.R. § 404.1705.  A claimant may waive his right to counsel if he is given sufficient information to enable him to intelligently decide whether to enlist the services of an attorney or to proceed without counsel.  "'Sufficient information' includes explanations of the possibility of free counsel, a contingency agreement,

and the limitation on attorney's fees to 25% of past due benefits awarded." *Watson v. Astrue,* 2008 WL 4072831 at *2 (W.D.La.2008)(citing *Clark v. Schweiker,* 652 F.2d 399, 403-04 (5th Cir.1981)).  A mere lack of counsel will not automatically invalidate an ALJ's decision; rather, the claimant must show that he was prejudiced thereby.  *Brock v. Chater,* 84 F.3d 726, 729 n. 1 (5th Cir.1996).  To establish prejudice a claimant must show that he "could have adduced evidence that might have altered the result."  *Id.* (citing *Kane v. Heckler,* 731 F.2d 1216, 1220 (5th Cir.1984)).

In this case the record reflects that plaintiff was given notice of her right to an attorney in advance of the hearing.  Tr. 118, 124-27.  Also, at the outset of the hearing the ALJ questioned plaintiff regarding waiving her right to representation and she voiced her desire to proceed without counsel.  Tr. 626.

We conclude plaintiff validly consented to proceed without representation.  Furthermore, even if plaintiff did not validly waive her right to proceed without an attorney she points to no evidence that would have been adduced at the hearing that could have changed the result had she been represented by an attorney.  In other words, she has shown no prejudice as a result of not having an attorney present at the hearing.  Additionally, at the August 3, 2011, hearing on remand the ALJ reconsidered plaintiff's entire disability case and she was represented by a non-attorney representative.  We thus find that plaintiff has failed to demonstrate that she was prejudiced by the absence of counsel at her first hearing.

Plaintiff also contends that she was denied a fair hearing at the August 3, 2011, hearing when the ALJ refused to grant a continuance after her non-attorney representative objected to the testimony of the medical experts by telephone rather than in person.  Plaintiff relies on non –

-16-

precedential cases in support of her assertion that reversal is required when plaintiff is not given notice that the testimony of an expert will be by telephone.[4]

In response, the Commissioner acknowledges that the notices of the hearing did not indicate that Dr. Klein and Dr. Barnes would testify by telephone; however, any error on the part of the ALJ, the Commissioner contends, was harmless because plaintiff's representative had the opportunity to fully question each witness on cross-examination.

We agree with the Commissioner.  While we have not found any Fifth Circuit law on point, we have found other district courts that have addressed the issue and found any error to be harmless.  For example, in *Green v. Astrue,* 2013 WL 636962 (D.Mass. Feb. 20, 2013) the court found that while the failure to give notice that expert testimony would be by telephone was error, the error was harmless.[5]  The court noted that plaintiff must show that harm or prejudice resulted from the error.  *Id.* at *11.  In that case the court found that plaintiff had ample opportunity to question the expert, there was nothing in the record that indicated that the lack of notice altered counsel's ability to prepare for the cross-examination, and noting in the record indicated that the telephone testimony prejudiced the plaintiff in any way.  *Id.*

The Fifth Circuit has found that procedural perfection is not required in administrative hearings, *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012), and the party seeking to overturn the Commissioner's decision has the burden to show that prejudice resulted from an error.  *Jones v. Astrue,* 691 F.3d 730, 734-35 (5th Cir. 2012).  Like the court in *Green*, we find in this case that plaintiff's non-attorney representative was given the opportunity to cross-examine the

---

[4] Plaintiff cites for example *Decker v. Comm'r of Soc. Sec.,* 2013 WL 4830961 (S.D. Ohio Sept. 10, 2013) (Reversal and remand was ordered "because [plaintiff] was not notified of the telephonic testimony in advance of the hearing."), and *Edwards v. Astrue,* (2010 WL 3490024 (D.Conn. Aug. 10, 2011)(Plaintiff was "harmed by the lack of notice tht the medical expert would be testifying by telephone").
[5] *See also, Goodwin v. U.S. Soc. Sec. Admin.,* 2011 WL 1630282 (D.N.H. Apr. 29, 2011), *Bates v. Astrue,* 2008 WL 1736819 (D.Del Apr. 11, 2008), and *Palaschak v. Astrue,* 2009 WL 6315324 (N.D.N.Y. Nov. 18, 2009).

experts, and did, in fact, question the experts at length.  Additionally, while plaintiff alleges error, she fails to show how and to what extend she was prejudiced by any such error.

For these reasons, we find this argument without merit.

### 3. Is the ALJ's residual functional capacity finding supported by substantial evidence?

Plaintiff contends that the ALJ's RFC finding is not supported by substantial evidence because he failed to mention the August 25, 2008, report of Dr. Bernauer who opined that plaintiff could not work in any job that required standing for longer than 30 minutes or walking for more than 50 yards.  Plaintiff, relying on a case out of this court, *Lute v. Colvin,* No. 12-cv-1891 (W.D.La. May 30, 2014), contends that reversal and remand is required because the ALJ failed to establish "good cause" for rejecting the expert opinion of Dr. Bernauer.

The Commissioner contends that while the ALJ's opinion may not specifically discuss Dr. Bernauer's report his opinion does state that he considered the entire record and his RFC is supported by the record evidence.

The ALJ found that plaintiff maintained the RFC to perform light work except that she was limited to standing and walking two hours in an eight hour work day.  He found that she must avoid exposure to uneven surfaces, climbing ladders, ropes, scaffolds, and balancing.  She was limited to occasional crouching. He determined that she was capable of understanding, remembering and carrying out simple instructions, she was moderately limited but still able to function satisfactorily in her ability to understand, remember, carry out detailed instructions, make judgments on simple work-related decisions, and respond appropriately to changes in a routine work setting.  Tr. 22-23.  In reaching this conclusion, the ALJ gave great weight to the

opinion of Dr. Barnes, a board-certified orthopedist, and he found that his opinion was consistent with the evidence as a whole[6].  Tr. 25.

Dr. Barnes opined that plaintiff could sit for eight hours in a work day and stand and walk for two hours in an eight hour work day.  He stated that she would need to avoid uneven surfaces such as rough ground, and would be restricted to occasionally squatting, bending, stooping, kneeling, crawling, and climbing stairs, and ramps.  Dr. Barnes did not impose a sit/stand option and did not see a need for plaintiff to elevate her foot at will.

The ALJ also noted that plaintiff was capable of caring for her six young children without any assistance and had not received any recent treatment for her calcaneus fracture.  Tr. 24-25. The record also reflects that plaintiff is able to prepare some meals which she estimated takes her two to three hours, do some housework, and walk to the grocery store to shop which takes four hours.  Tr. 219-20.

An assessment of a claimant's RFC is the responsibility of the ALJ.  *Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir. 1995).  In reviewing for substantial evidence, our court may not reweigh the evidence or substitute our judgment for that of the ALJ.  *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir. 1994).  A finding of "no substantial evidence" is proper only if "there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"  *Johnson v. Bowen,* 864 F.2d 340, 343-44 (5th Cir.1988)(citing *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983).

We find that the record contains substantial evidence to support the ALJ's determination that plaintiff was capable of standing and/or walking for two hours in an eight hour work day.

---

[6] Although plaintiff asserts that Dr. Barnes was not provided with a copy of Dr. Bernauer's report, the record reflects that this statement is not correct.  Dr. Bernauer's report is found in the record at Exhibit 10 E and Exhibit 8 F.  Dr. Barnes testified that prior to his testimony he reviewed Exhibits 1-22 F which would necessarily include Exhibit 8 F. Tr. 676.

We also find that plaintiff's reliance on the opinion issued in *Lute v. Colvin* is misplaced.  In that case we agreed with the Commissioner that the case should be reversed and remanded for several reasons one of which was that the ALJ assigned no weight to the opinion of Dr. Bernauer because he did not appear after the court issued a subpoena for his appearance at a hearing.  The court stated,

> [T]he ALJ, on his own initiative issued the subpoena for Dr. Bernauer and reasoned that simply because Dr. Bernauer failed to appear at the hearing, he would ignore his opinion.  This was error.  The ALJ should have either enforced the subpoena, if he genuinely wanted to question Dr. Bernauer, or explained his reasons for outright rejecting Dr. Bernauer's opinion in his findings.  He did neither and the court must reverse.

*Lute* at p. 7.  The Fifth Circuit has held that an ALJ cannot reject a medical opinion without an explanation.  *Loza v. Apfel,* 219 F.3d 378, 395 (5th Cir. 2000).  We find the present case distinguishable because here the ALJ did not outright reject the opinion of Dr. Bernauer.  Before making his RFC determination the ALJ stated that he carefully considered all the evidence of record which would include Dr. Bernauer's opinion.  The ALJ determined that he would give great weight to the opinion of Dr. Barnes because he found that his opinion was consistent with the evidence as a whole.  We further note that Dr. Bernauer's opinion was issued on August 25, 2008, two years prior to the date of the ALJ's opinion and the ALJ also commented that plaintiff has not had any recent treatment for her calcaneus fracture.

Based on our review of the record evidence, we find that the RFC determination is supported by objective medical evidence and expert testimony.  Thus, we find this argument without merit.

### 4.   Did the ALJ pose a defective hypothetical question to the vocational expert?

Plaintiff argues that the hypothetical question the ALJ asked the VE was defective because it failed to incorporate the limitations set forth in Dr. Bernauer's report.

In response, the Commissioner, relying on the case of *White v. Astrue,* 240 F.App'x 632, 634 (5th Cir.2007)(citing *Bowing v. Shalala,* 36 F.3d 431, 436 (5th Cir. 1994)), asserts that the hypothetical reasonably incorporated all plaintiff's disabilities and limitations recognized by the ALJ.  Therefore, the Commissioner contends that the question to the VE was proper.

In *Bowling* the Fifth Circuit determined that:

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to reasonably incorporate all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the questions), a determination of non-disability based on a such defective question cannot stand.

*Id.* at 436.  In this case, the ALJ's hypothetical included the limitations of  "sit[ting] for eight hours out of an eight-hour workday; stand[ing] and/or walk[ing] two hours our of an eight-hour workday."  Tr. 684.  We find that this limitation necessarily takes into account Dr. Barnes's restrictions and that the question reasonably incorporated all disabilities and limitations recognized by the ALJ.  We further note that plaintiff was represented by an attorney at the hearing who was able to, and in fact did, cross examine the VE concerning any defects in the hypothetical question. Tr. 47-49.  Here, the hypothetical that the ALJ posed to the VE faithfully incorporated all of the limitations recognized in his RFC assessment, which we find is supported by substantial evidence.

## V.
### CONCLUSION

Based on the foregoing, we find substantial evidence of record and relevant legal precedent support the ALJ's decision that plaintiff is not disabled.   It is therefore

RECOMMENDED that the ALJ's decision be AFFIRMED and this matter be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers this 7th day of April, 2015.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE